Ronnie HALL, Appellant,

v.

The STATE of Texas.

No. PD–0277–04.

Court of Criminal Appeals of Texas.

Feb. 16, 2005.

---

Nelda Williams, Huntsville, for Appellant.

Melinda Mayo, special Prosecution Unit, Amarillo, Matthew Paul, State's Atty., Austin, for State.

## OPINION

COCHRAN, J., delivered the opinion of the Court in which KELLER, P.J., MEYERS, PRICE, WOMACK, JOHNSON, HERVEY and HOLCOMB, JJ., joined.

Appellant, a prison inmate, approached Correctional Officer Mark Enloe in the hallway outside the prison cafeteria. During a heated argument, Officer Enloe pushed appellant towards his cell, and appellant retaliated by punching Enloe in the face. Appellant was charged with the felony of assault on a public servant.[1] At trial, appellant admitted hitting Enloe, but contended that he offered some evidence that Enloe was not "lawfully discharging" his official duties as a correctional officer when he pushed appellant. Therefore, appellant argues, the trial court erred in refusing his request for a jury instruction on the lesser-included offense of misdemeanor assault. The court of appeals affirmed and stated that because Enloe was on duty and acting within his official capacity, appellant failed to offer evidence "that would allow a rational jury to convict Hall of *only* the lesser-included offense of assault."[2]

We must decide whether the court of appeals erred in finding that appellant was not entitled to a charge on the lesser-included offense of misdemeanor assault.[3] We agree with appellant that if there is record evidence that demonstrates a public officer is *unlawfully* discharging his official duties at the time a person assaults him, the defendant is entitled to a lesser-included charge. But because appellant did not offer evidence that Officer Enloe acted "unlawfully," we affirm the judgment of the court of appeals.

1. Tex. Pen.Code § 22.01(b)(1).

2. *Hall v. State*, No. 10–02–156–CR, slip op. at 8, 2004 WL 177895, 2004 Tex.App. LEXIS 944 * 11 (Tex.App.-Waco, Jan. 28, 2004) (emphasis in original).

3. Specifically, we granted appellant's two grounds of review:
   (1) The court of appeals erred in finding that the trial court properly refused to give a jury charge on the lesser-included offense of assault: there was evidence that the officer was not "lawfully" discharging his duties at the time of the offense.
   (2) The court of appeals erred in not addressing petitioner's argument that previous interpretations of penal code section 22.01(b)(1) render a portion of that statute superfluous and fail to effectuate the intent of the legislators.

## I.

On March 7, 2001, Mark Enloe, a correctional officer at the Ferguson Unit of the Texas Department of Criminal Justice (TDCJ), filed a disciplinary report accusing appellant and his cell-mate, Michael Rocha, of having tobacco in their cell. Approximately one week later, Officer Enloe was on duty near the cafeteria, supervising the inmates' return to their cells from dinner. Appellant and Rocha approached Enloe and asked him about the "bogus" disciplinary report. According to inmate witnesses, none of whom heard the exact words, appellant and Enloe got into a heated argument. It appeared to the inmates that Enloe did not want to talk and instead wanted appellant to return to his cell block. One inmate testified that he heard Enloe tell appellant to "go on."

When appellant refused to move, Officer Enloe pushed appellant in the direction of his cell.[4] At trial, a warden testified for the State that if an inmate refuses to enter a cell block, a push towards that block "would be exactly what the employee is supposed to do." However, other correctional officers testified that this behavior violates TDCJ policy that forbids officers from touching inmates except when necessity dictates. Here, the push was hard enough that appellant stumbled and may have hit his head on a nearby brick wall. In response to what appellant viewed as a personal, "man-to-man" attack, appellant punched Officer Enloe in his face with such force that Enloe collapsed to the ground. At this point, someone yelled "fight," and other guards came running. By the time these guards reached Enloe, another prisoner had joined in the melée and both were hitting and kicking the unconscious officer. The guards quickly broke up the fight and took Officer Enloe to the infirmary.

Officer Enloe suffered numerous injuries: his eyes were so swollen that he could not see, his lip required sutures, and his mouth was so swollen that he could not eat and had difficulty drinking. He did not return to work for about two weeks.

The trial judge instructed the jury on the general law of self-defense and set out a self-defense application paragraph tailored to the specific situation, but he declined to give an additional instruction on the lesser-included offense of misdemeanor assault. The jury rejected appellant's self-defense argument and convicted him of the third-degree felony of assault on a public servant. After finding that appellant was an habitual felon, the jury sentenced him to ninety-nine years' imprisonment.

On appeal, appellant claimed that the trial court erred by refusing to charge the jury on the lesser-included offense. He contended that because Officer Enloe shoved him, Officer Enloe was not "lawfully" discharging his official duties as a public servant. The court of appeals held that, although misdemeanor assault is a lesser-included offense of assault of a public servant, a rational jury could not have found that Officer Enloe was not discharging his duties as a public servant at the time of the assault. The court of appeals stated that:

[A]t the time of the attack, Enloe was on-duty, in uniform, and supervising in-

---

4. Officer Enloe testified that he never had any argument or conversation with either appellant or Michael Rocha on this day, that he did not push appellant, and would not recognize either man. However, he also testified that he suffered a severe head injury and did not regain consciousness until hours later when he awoke in the prison hospital. It was the testimony of several prisoners and one prison guard that filled in the holes. In particular, Officer Brown, the only guard to see the attack, testified that he heard loud footsteps and turned to see appellant attack Officer Enloe.

mates, *i.e.*, acting within his official capacity. Even if Enloe had violated a TDCJ policy, it would not mean that he was not performing an official duty as a public servant for the purposes of this statute.[5]

The court of appeals therefore concluded that the trial court properly refused appellant's request for the lesser-included charge.

## II.

■ In making the decision on whether a jury should be instructed on a lesser offense, courts apply the two-prong *Aguilar/Rousseau* test.[6] The first step requires a court to determine whether the lesser offense actually is a lesser-included offense of the offense charged as defined by article 37.09.[7]

Assault of a public servant, as alleged in this case,[8] requires proof of misdemeanor assault plus proof of four additional elements:

1) the person assaulted was a public servant;

2) the actor knew that the person he assaulted was a public servant;

3) the person assaulted was discharging official duties at the time of the assault;

4) the person assaulted was lawfully discharging official duties.[9]

Because the offense of assault of a public servant differs from misdemeanor assault only because it requires proof of additional facts, the first prong of the *Aguilar/Rousseau* test is satisfied.

■ However, simply because a lesser offense is included within the proof of a greater offense does not necessarily mean that a jury charge on the lesser offense is warranted.[10] The second prong of the *Aguilar/Rousseau* test asks whether the record contains some evidence that would permit a rational jury to find that the defendant is guilty *only* of the lesser-included offense.[11] In other words, there must be some evidence from which a rational jury could acquit appellant of assault on a public servant while convicting him of the lesser-included offense of misdemeanor assault.[12] In making this decision, the court evaluates the evidence in the context of the entire record, but does not consider whether the evidence is credible, controverted, or in conflict with other evidence.[13]

## III.

In this case, we must decide whether a rational jury could find appellant guilty of only misdemeanor assault, not assault of a

---

**5.** *Hall*, slip op. at 8, 2004 WL 177895, at *4, 2004 Tex.App. LEXIS 944 * 10 (citing *Sherman v. State*, 20 S.W.3d 96, 103 (Tex.App.-Texarkana 2000, no pet.)).

**6.** *Feldman v. State*, 71 S.W.3d 738, 750 (Tex.Crim.App.2002).

**7.** Tex.Code Crim. Proc. art. 37.09; *see Feldman*, 71 S.W.3d at 750; *Rousseau v. State*, 855 S.W.2d at 672; *Aguilar v. State*, 682 S.W.2d 556, 558 (Tex.Crim.App.1985).

**8.** Section 22.01(b)(1) provides two statutorily distinct ways of committing felony assault on a public servant, assault while the public servant is performing an official duty or assault in

retaliation for the performance of an official duty. Tex. Pen.Code § 22.01(b)(1).

**9.** Tex. Pen.Code § 22.01(b)(1).

**10.** *Aguilar*, 682 S.W.2d at 558.

**11.** *Schweinle v. State*, 915 S.W.2d 17, 18 (Tex.Crim.App.1996); *Rousseau*, 855 S.W.2d at 672; *Royster v. State*, 622 S.W.2d 442, 444 (Tex.Crim.App.1981).

**12.** *Bignall v. State*, 887 S.W.2d 21, 23 (Tex.Crim.App.1994).

**13.** *Havard v. State*, 800 S.W.2d 195, 216 (Tex.Crim.App.1990)(op. on reh'g).

public servant. If there is affirmative evidence in the record that negates one of the four additional elements of assault on a public servant, yet admits the underlying assault, appellant would be entitled to a lesser-included charge of misdemeanor assault. The only element of assault of a public servant that appellant claims that he has affirmatively negated is the element that Officer Enloe was in the "lawful discharge" of his official duties. He asserts that he offered some evidence that Officer Enloe acted "unlawfully" when he pushed appellant in the direction of his cell, and the officer therefore stepped outside the lawful performance of his official duties. Appellant argues that the obvious intent of the legislature "is to allow enhancement only if the public servant is not a wrongdoer, abusing the power of his position at the time of the offense." In theory, appellant is correct. A correctional officer who tortures, sexually harasses, mutilates or otherwise violates the civil rights of prisoners within his charge while on official duty is not acting in the "lawful discharge" of those duties.

This Court has addressed the general issue of a police officer's "lawful discharge" of official duties as it relates to a lesser-included charge on several occasions. In doing so, we have repeatedly stated that "as long as the officer was acting within his capacity as a peace officer, he was acting within the lawful discharge of his official duties." [14] In particular, we have looked at the details of the encounter, such as whether the police officer was in uniform, on duty, and whether he was on regular patrol at the time of the assault. The issue has arisen most frequently in the context of whether the officer was making a "lawful" arrest. [15] As we have concluded in those cases, the "lawful discharge" of official duties in this context, does not mean that the officer has crossed every "t" and dotted every "I" of every duty that relates to his public office. [16] The legislature surely did not intend that a defendant is entitled to a lesser-included instruction of misdemeanor assault if he punches the interrogating police officer because that officer failed to read him his *Miranda* rights. Or that a defendant is entitled to a lesser-included instruction of misdemeanor assault if he punches a trial judge in the face because the judge failed to admonish him of the maximum range of punishment and therefore was acting "unlawfully" in taking his plea. Rather, the "lawful discharge" of official duties in this

14. *Guerra v. State*, 771 S.W.2d 453, 461 (Tex. Crim.App.1988); *Montoya v. State*, 744 S.W.2d 15, 29 (Tex.Crim.App.1987), *overruled on other grounds by Cockrell v. State*, 933 S.W.2d 73, 89 (Tex.Crim.App.1996). In *Montoya*, the defendant argued that, because the evidence showed that the police officer was not making a lawful arrest, the officer was not acting in the lawful discharge of his official duty. However, the Court held that the requirement of a lawful arrest was not required to demonstrate that the officer was acting within the lawful discharge of his official duties. *Id.*

Using similar reasoning in *Hughes v. State*, 897 S.W.2d 285, 298 (Tex.Crim.App.1994), we held that whether the officer's traffic stop of appellant was constitutionally reasonable "is not relevant to determining if [the police officer] was acting in the lawful discharge of his duties." *Id.* at 298 (quoting *Montoya* 744 S.W.2d at 29).

15. *See Hughes*, 897 S.W.2d at 297–98; *Guerra*, 771 S.W.2d at 460–61.

16. *See Montoya*, 744 S.W.2d at 29–30 (even if police officer was making an "unlawful" arrest at the time defendant shot him, no evidence supported submission of lesser-included offense of murder in capital-murder prosecution; concluding that "evidence that the peace officer was making an arrest which was in excess of his authority does not dispute or challenge the allegation that the officer was acting in the lawful discharge of an official duty").

context means that the public servant is not criminally or tortiously abusing his office as a public servant [17] by acts of, for example, "official oppression" or "violations of the civil rights of a person in custody" [18] or the use of unlawful, unjustified force.

■ Furthermore, the Texas Penal Code provides guidelines for when a correctional officer's use of force is considered "lawful." Knowing the innate danger in maintaining a correctional facility, the legislature grants correctional officers the right to use reasonable force against an inmate to maintain their own safety, the safety of others, or the security of the prison as a whole.[19] Section 9.53 of the Code states:

> An officer or employee of a correctional facility is justified in using force against a person in custody when and to the degree the officer or employee reasonably believes the force is necessary to maintain the security of the correctional facility, the safety or security of other persons in custody or employed by the correctional facility, or his own safety or security.[20]

Thus, if a correctional officer's use of force falls within the above definition, he is lawfully discharging his official duties, and, if assaulted at this time, the actor is guilty of assault of a public servant rather than mere misdemeanor assault.[21]

## IV.

In this case, only if there were some record evidence, from any source, that would show that Officer Enloe was criminally or tortiously abusing his status as a public servant at the time of the assault, would appellant be entitled to a lesser-included instruction. There is no such evidence.

■ Here, appellant and his cell-mate, upset about what they claim was a "bogus" disciplinary writeup, approached Officer Enloe, who was standing alone in the hall. The discussion quickly turned into a heated argument. Officer Enloe, attempting to end this encounter, told appellant to "move on." When a verbal warning failed, Enloe pushed appellant towards his cell. Because appellant refused to comply with the verbal order to leave and instead continued to argue, this situation could have easily escalated into a physical fight as, in fact, it did. Officer Enloe's shove—an attempt to move appellant toward his cell and preserve his own and others' safety—was well within the scope of his lawful duties. It is clear that section 9.53, justifying the use of force by correctional officers, was intended to prevent precisely what occurred here—Officer Enloe was punched in the face, knocked unconscious, suffered multiple injuries, and was then encircled by other inmates, at least one of whom, Michael Rocha, punched and kicked him until other guards rescued him.

Appellant points to his own testimony that he thought Officer Enloe was not acting within his job description as a correctional officer when Enloe pushed him. He also offered his own testimony and that of other inmates and some guards, of their

---

17. With respect to appellant's self-defense instruction, the conscientious trial judge instructed the jury that " 'unlawful' means criminal or tortious or both and includes what would be criminal or tortious but for the defense not amounting to justification or privilege."

18. *See* TEX. PEN.CODE §§ 39.03, 39.04.

19. *Johnson v. Peterson*, 799 S.W.2d 345, 347 (Tex.App.-Houston [14th Dist.] 1990, no writ).

20. TEX. PEN.CODE § 9.53.

21. The trial judge appropriately included a jury instruction on section 9.53.

"understanding" of the "minimum use of force" policy at the prison. But evidence of the violation of internal prison policies and procedures does not suffice to raise a valid, rational conclusion that Officer Enloe was criminally or tortiously abusing his official office or duties at the time of the assault.[22] There is no record evidence that Officer Enloe unjustifiably or maliciously hauled off and pushed or punched a quietly passing inmate who was minding his own business. Appellant instigated the confrontation, and he refused to obey a legitimate order by a correctional officer. Regardless of whether he considered his punch a Hemingway-esque "man-to-man" reaction to Officer Enloe's push, there is no evidence that would support a rational conclusion that Officer Enloe was not lawfully discharging his official duties at the time appellant punched him.

From an evaluation of the facts in this case, it is clear that the second prong of the *Aguilar/Rousseau* test is not satisfied. Thus, appellant was not entitled to a lesser-included offense instruction. We affirm the decision of the court of appeals.

KEASLER, J., concurred.

---

**22.** *See, e.g., Sherman v. State,* 20 S.W.3d 96, 102–03 (Tex.App.-Texarkana 2000, no pet.) (defendant charged with assault on a correctional officer was not entitled to submission of lesser-included charge on misdemeanor assault based upon testimony that prison officer repeatedly cursed defendant and that use of profanity by a guard against an inmate violates TDC policy; concluding that "[e]ven if [officer] violated a TDC policy, this does not mean that he was not performing an official duty as a public servant for the purpose of this statute").