

# Fourth Court of Appeals

## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00483-CR

Ricardo **GONZALES**, Jr.,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2017-CR-13554
Honorable Jefferson Moore, Judge Presiding

Opinion by:    Irene Rios, Justice

Sitting:    Rebeca C. Martinez, Chief Justice
Irene Rios, Justice
Lori Massey Brissette, Justice

Delivered and Filed: August 27, 2025

REVERSED AND REMANDED

Appellant Ricardo Gonzales, Jr. appeals his convictions for assault causing bodily injury, official oppression, and violation of civil rights of a person in custody, all class A misdemeanors at the time of their alleged commission in 2014. We reverse all three of Gonzales's convictions and remand for a new trial on all three charges.

## PROCEDURAL HISTORY

This appeal was originally submitted before this court on an appellant's brief containing sixteen issues. In that brief, Gonzales argued: (1) the State withheld *Brady*[1] evidence when it failed to disclose to the defense that other team members working with Gonzales who witnessed the event in question did not believe Gonzales intended to harm the complainant; (2) the trial court abused its discretion when it did not hold a hearing on Gonzales's motion for new trial; (3) the trial court abused its discretion when it denied Gonzales's motion for new trial on all three counts by operation of law; (4)-(5) the trial court abused its discretion by excluding defense exhibits 35 and 39; (6) the trial court erred in overruling Gonzales's request for a mistrial when the State did not disclose *Brady* evidence until after jury selection; (7) the trial court erred when it failed to give an accomplice witness instruction in the jury charge; (8) the prosecutor's closing argument was improper; (9) legally insufficient evidence supports Gonzales's conviction for violating the civil rights of a person in custody; (10) legally insufficient evidence supports Gonzales's conviction for official oppression; (11) legally insufficient evidence supports Gonzales's conviction for assault; (12) the trial court erred when it admitted evidence of extraneous 404(b) incidents; (13) the trial court erred by allowing a retired deputy to give an opinion on the complaint's cause of injury when the witness lacked expertise for the opinion; (14) the State asked improper commitment questions during voir dire; (15) the trial court improperly commented on the weight of the evidence; and (16) the trial court erred when it did not allow the defense to present a *Brady* disclosure that rebutted one of the admitted extraneous incidents.

In a written opinion issued on August 28, 2024, we overruled Gonzales's rendition issues challenging the sufficiency of the evidence supporting the convictions. *See Gonzales v. State*, No.

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963).

04-22-00483-CR, 2024 WL 3954228, at *1–8 (Tex. App.—San Antonio Aug. 28, 2024, no pet.) (mem. op., not designated for publication). However, we concluded the trial court erred when it did not hold a hearing on his motion for new trial. *Id.* at 8–11. Accordingly, we sustained his second issue, abated this appeal, and remanded the cause to the trial court to hold a hearing on Gonzales's motion for new trial. *Id.* at *10–11.

The trial court held the new trial hearing on May 7, 2025, and granted a new trial on the violation of the civil rights of a person in custody and official oppression convictions but denied the motion for a new trial on the assault conviction. A supplemental clerk's record was filed in this court containing the order granting in part and denying in part the motion for new trial. After receiving the supplemental record, we reinstated and resubmitted the appeal on the original briefs. Now, we address Gonzales's first and third issues from his original appeal contending the trial court erred by denying his motion for a new trial concerning his assault charge because the State violated *Brady*.

## FACTUAL BACKGROUND

In 2014, Gonzales worked as a Bexar County Sheriff's Office deputy at the Bexar County Adult Detention Center and acted as a member of the Special Emergency Response Team ("SERT"), a team of special officers who undergo extensive and continuous monthly training. The SERT responds to emergency situations, including medical emergencies, riots, and fights. Here, the mental health unit ("MHU") called the SERT because an inmate, Owen Gilbert, was being disruptive and had struck another deputy in the knee. Gonzales originally tried to stand Gilbert up from his lying position, but after standing up, Gilbert moved his head back and either attempted or successfully head-butted Gonzales. In response, Gonzales raised Gilbert off the floor from behind him and took Gilbert down to the floor. The State presented evidence to show Gonzales

performed an impermissible leg-sweep on a restrained inmate when bringing Gilbert to the ground. Gonzales contested the State's position that he performed an impermissible maneuver when bringing Gilbert to the ground. As a result of Gonzales's interaction with Gilbert, Gilbert suffered a head injury causing him to be transported to the hospital.

Gonzales was indicted for aggravated assault with a deadly weapon, assault causing bodily injury, official oppression, and the violation of the civil rights of a person in custody. *See* TEX. PENAL CODE ANN. §§ 22.01(a)(1), 22.02(a)(2), 39.03(a)(1), 39.04(a)(1). The jury acquitted Gonzales of aggravated assault with a deadly weapon but found him guilty of the lesser included offense of assault causing bodily injury. The jury also found Gonzales guilty of official oppression and the violation of the civil rights of a person in custody. The trial court sentenced Gonzales to one year in jail for each offense to run concurrently, then suspended his sentences, and placed him on community supervision for one year for each offense.

Following his trial, Gonzales filed a motion for new trial in his case alleging the State withheld exculpatory *Brady* evidence—namely two SERT members interviewed pretrial by the State who did not believe Gonzales intended to harm Gilbert—as well as the State's affirmative misrepresentation to Gonzales's trial counsel that no SERT member would provide favorable evidence on Gonzales's behalf. In support of his motion, Gonzales attached two sworn affidavits, one from Ben M. Sifuentes, Jr., Gonzales's lead trial counsel, and the other by the SERT member responsible for recording the incident, former Deputy Guadalupe Trevino, who averred Gonzales did not intend to harm Gilbert and did not perform the leg sweep as alleged by the State at trial.

On remand at the hearing on his motion for new trial, six witnesses testified including two of the prosecutors who tried Gonzales; Sifuentes; Deputy Garza, who testified during the punishment phase of Gonzales's trial; Trevino; and Sergeant Sprague, who testified during

Gonzales's trial. The trial court made findings of fact and conclusions of law that were included in the supplemental record filed with this court. An unofficial transcript of the hearing was also included in the clerk's supplemental record.

After hearing from the witnesses, the trial court determined Deputy Garza's testimony stating he did not believe Gonzales intended to harm Gilbert would be inadmissible because, although Deputy Garza was present during the incident, he did not personally observe the incident. The trial court concluded Deputy Garza formed his opinion from viewing video footage of the incident and failure to disclose his opinion was not a *Brady* violation. With respect to Trevino, however, the trial court concluded the State violated *Brady* when it withheld favorable material statements Trevino made to the State during his pre-trial interview with the prosecutors. In particular, the State possessed evidence that Trevino, who personally witnessed and videorecorded the incident, indicated to the State that he did not believe Gonzales ever intended to hurt Gilbert. Additionally, after reviewing the videorecording, which was played and often paused on frames by the State during Trevino's interview, Trevino firmly opined that Gonzales did not perform the "leg sweep" or an impermissible maneuver while gaining control of Gilbert.

The trial court concluded Trevino's testimony was *Brady* material that should have been disclosed because it was favorable evidence regarding the intentional culpable mental state required to prove a person committed official oppression and violated the civil rights of a person in custody. Accordingly, the trial court granted Gonzales's motion regarding these two offenses. However, the trial court denied Gonzales's motion for a new trial on his assault conviction because it concluded:

- The requisite culpable mental state to convict a person of assault includes intentionally, knowingly, and recklessly, and thus the State had to prove Gonzales "*either intentionally, knowingly, or recklessly*" caused bodily injury to Gilbert.

- Trevino's withheld statement expressing his opinion regarding Gonzales's culpable mental state "would have impacted the defense's strategy defending the claims of intentional conduct, may have impacted the defense's strategy regarding knowing conduct, but would likely not have changed defense's strategy in defending against reckless conduct."

- Even had the defense been provided Trevino's withheld statements, "the defense would not have benefited to the extent that the results of the proceeding would have changed" as to Gonzales's conviction for assault.

**MOTION FOR NEW TRIAL**

Because the trial court granted Gonzales's motion for new trial regarding his convictions for official oppression and the violation of the civil rights of a person in custody, we focus solely on whether the trial court abused its discretion when it denied Gonzales a new trial on his conviction for assault.

*Standard of Review*

We review a trial court's ruling on a motion for new trial for an abuse of discretion. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007). An abuse of discretion occurs if the trial court acted without reference to any guiding rules or principles. *State v. Thomas*, 428 S.W.3d 99, 103 (Tex. Crim. App. 2014). Under this standard, the reviewing court must view the evidence in the light most favorable to the trial court's ruling, and only reverse if no reasonable view of the record could support the trial court's ruling. *See Webb*, 232 S.W.3d at 112.

*Applicable Law Under Brady*

In *Brady v. Maryland*, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *see also Ex parte Lalonde*, 570 S.W.3d 716, 724 (Tex. Crim. App. 2019). "Thus, *Brady* is violated when three requirements are

satisfied: (1) the State suppressed evidence; (2) the suppressed evidence is favorable to the defendant; and (3) the suppressed evidence is material." *Lalonde*, 570 S.W.3d at 724.

"Under *Brady*, nondisclosure of favorable evidence violates due process only if it is 'material' to guilt or punishment." *Pena v. State*, 353 S.W.3d 797, 812 (Tex. Crim. App. 2011). "Evidence is material to guilt or punishment 'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Ex parte Reed*, 271 S.W.3d 698, 727 (Tex. Crim. App. 2008) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). "A 'reasonable probability' of a different result is accordingly shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Id.* (quoting *Bagley*, 473 U.S. at 678). "Materiality is determined by examining the alleged error in the context of the entire record and overall strength of the state's case." *Diamond v. State*, 613 S.W.3d 536, 546 (Tex. Crim. App. 2020). "The suppressed evidence is considered collectively, not item-by-item." *Id*.

Under *Brady*, the defendant bears the burden of showing that, considering all the evidence, it is reasonably probable that the outcome of the trial would have been different had the prosecution made a timely disclosure of the evidence at issue. *Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002). Merely showing that the undisclosed evidence could have possibly helped the defense or may have affected the outcome of the trial is not enough to establish materiality in the constitutional sense. *Webb*, 232 S.W.3d at 115.

*Analysis*

The trial court concluded there was a *Brady* violation regarding his convictions for official oppression and violation of the civil rights of a person in custody. Thus, Gonzales met his burden for a new trial for these convictions by satisfying all three *Brady* prongs. The evidence supporting the trial court's findings of fact and conclusions of law that established the first two prongs needed to prove a *Brady* violation with respect to the other convictions also satisfies the first two prongs in our determination of whether Gonzales can prove a *Brady* violation occurred in his assault trial. *See Lalonde*, 570 S.W.3d at 724 (setting forth the three requirements a defendant must establish to prove a *Brady* violation). It is undisputed the State failed to disclose evidence from its pre-trial interviews with Deputy Garza and Trevino. And even if we disregard Deputy Garza's testimony, Trevino's testimony that he did not believe Gonzales intended to hurt Gilbert and did not think Gonzales performed the leg sweep or an impermissible maneuver to take Gilbert to the ground is clearly favorable to Gonzales. At the motion for new trial, Trevino recalled telling the State his opinion during his interview, the State acknowledged that it had interviewed Trevino, and Gonzales's lead trial attorney testified he asked the State for all favorable evidence to be turned over. Gonzales's lead trial counsel also testified Trevino's testimony would have been helpful at trial to negate the culpable mental state of the assault conviction and negate the State's argument that Gonzales employed "an improper leg sweep" that resulted in excessive force. When viewed together, we agree with the trial court's conclusion that the State withheld favorable evidence from Gonzales. Thus, we are tasked with deciding whether this suppressed favorable evidence was material to Gonzales's guilt or punishment by determining whether there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *See Reed*, 271 S.W.3d at 727.

It appears the trial court found Trevino's testimony was only material to charges that required an intentional mens rea. Because the necessary mens rea to convict a person of assault can result from the person acting recklessly as opposed to just intentionally or knowingly, the trial court concluded Gonzales was not entitled to a new trial because the jury could have determined Gonzales acted recklessly, thereby negating the materiality of Trevino's testimony as to Gonzales's lack of intent to hurt Gilbert. *See* TEX. PENAL CODE ANN. §§ 6.03, 22.01(a)(1). However, Trevino's testimony was not limited to evidence regarding Gonzales's intent, or lack thereof, to hurt Gilbert. Rather, Trevino's testimony regarding his belief—based on Trevino's training and experience and his personal observation of the incident in question—also included his opinion that Gonzales did not perform a leg sweep or other impermissible maneuver when he brought Gilbert to the ground.

To prove assault with a reckless mens rea, the State must show that under the circumstances, here, restraining an uncooperative, mentally unstable prisoner who had already injured another prison guard, Gonzales acted with conscious disregard of a substantial and unjustifiable risk that his actions would cause bodily injury to Gilbert. *See* TEX. PENAL CODE ANN. §§ 6.03(c), 22.01(a)(1). This risk "must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." *See id*. § 6.03(c). Trevino, who was a former SERT member, testified that, from his personal observance of the incident, Gonzales did not conduct a leg sweep or other impermissible maneuver to bring Gilbert to the ground. His testimony goes to the heart of whether Gonzales's actions constituted a gross deviation from a standard of care that another ordinary person in Gonzales's situation under the circumstances would exercise. When considering Trevino's testimony regarding not only his belief that Gonzales did not intend

to hurt Gilbert but also that Trevino did not think Gonzales performed the leg sweep as accused by the State, the jury could have determined Gonzales acted negligently, which is insufficient to support a conviction for assault, rather than recklessly. *See id.* §§ 6.03(c), (d), 21.01(a)(1). Criminally negligent conduct occurs when the actor ought to have been aware of a substantial and unjustifiable risk when acting but failed to perceive it. *Id.* § 6.03(d).

It is questionable whether the trial court could properly deny Gonzales's motion for new trial of his assault conviction based on the assumption that all members of the jury determined Gonzales acted recklessly, rather than intentionally or knowingly. However, we need not decide that issue today because Trevino's testimony, as explained above, is material to a jury's determination of whether Gonzales acted intentionally, knowingly, *or* recklessly. Because the mens rea is an element of the assault offense, Trevino's testimony was material to Gonzales's assault conviction and constituted a *Brady* violation. *See id*. §§ 6.03, 21.01(a)(1); *see also Pena*, 353 S.W.3d at 812; *Reed*, 271 S.W.3d at 727.

Moreover, the Texas Court of Criminal Appeals has referred to section 9.53 of the Texas Penal Code as the standard for determining whether a correctional facility officer who uses force against an inmate is acting "lawfully." *See Hall v. State*, 158 S.W.3d 470, 475 (Tex. Crim. App. 2005). Under section 9.53, an officer or employee of a correctional facility, such as Gonzales, is "justified in using force against a person in custody when and to the degree the officer or employee reasonably believes the force is necessary to maintain the security of the correctional facility, the safety or security of other persons in custody or employed by the correctional facility, or his own safety or security." TEX. PENAL CODE ANN. § 9.53. Therefore, Trevino's testimony concerning his belief that Gonzales did not perform the leg sweep or impermissible maneuver but instead performed the necessary actions to gain control over Gilbert, goes to the very nature of whether

Gonzales acted "lawfully" and thus was justified in his actions. *See id.*; *see also Hall*, 158 S.W.3d at 475. Trevino's testimony was material to the jury's determination of whether Gonzales's actions were justified as an officer of a correctional facility, especially considering this defense was included in the jury charge. *See* TEX. PENAL CODE ANN. § 9.53; *Pena*, 353 S.W.3d at 812; *Reed*, 271 S.W.3d at 727. We therefore conclude the trial court erred when it denied Gonzales's motion for a new trial for his assault conviction based on the State's *Brady* violation.

Accordingly, we sustain Gonzales's first and third issues and remand the cause to the trial court for a new trial.[2]

## CONCLUSION

In accordance with this opinion and the trial court's May 7, 2025 order granting Gonzales a new trial for Counts II and III, we reverse the trial court's judgments of conviction for the violation of civil rights of a person in custody (Count II), official oppression (Count III), and assault causing bodily injury (Count IV), and remand the cause for a new trial on all three charges.

Irene Rios, Justice

DO NOT PUBLISH

---

[2] In our previous opinion, we addressed Gonzales's rendition issues pertaining to the sufficiency of the evidence to support his convictions. Upon remand for a hearing on Gonzales's motion for new trial, the trial court granted Gonzales a new trial on his convictions for violation of civil rights of a person in custody and his official oppression convictions. And here we sustain Gonzales's first and third issues concluding that Gonzales has the right to a new trial concerning his assault causing bodily injury conviction. We need not address Gonzales's remaining issues because review of those issues would not afford Gonzales any further relief than has been granted in this opinion. *See* TEX. R. APP. P. 47.4.